12710

AMERICAN FERTILIZING CO. v. BRIGMAN

(149 S. E., 105)

*Messrs. Rogers & Ellerbe,* for appellant,

*Mr. D. E. Ellerbe,* for respondent,

August 9, 1929.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by the plaintiff, American Fertilizing Company, against the defendant, J. O. Brigman, commenced in the Court of Common Pleas for Marion County, is a suit on a promissory note, alleged to have been executed by the defendant payable to the order of the plaintiff in the sum of $1,175.04, dated March 15, 1926, due September 15, 1926, bearing interest from April 10, 1926, at the rate of 8 per cent. per annum, and containing the usual provision for the payment of attorney's fees. The case came on for trial in said Court (the date not appearing in the transcript of record) before his Honor, Judge W. H. Grimball, and a jury. At the close of the plaintiff's testimony the defendant made a motion for direction of a verdict, which motion, after due consideration by the Court, was refused. Following the re-·fusal of defendant's motion for direction of a verdict, by

permission of the Court, the defendant introduced testimony, and the plaintiff introduced testimony in reply. At the close of all the testimony the defendant renewed his motion for direction of a verdict, and the plaintiff also moved for a directed verdict. The Court refused defendant's motion, but granted the plaintiff's motion, directing a verdict against the defendant for the full amount. From the entry of judgment on the verdict directed, the defendant has appealed to this Court, asking a reversal of the judgment upon the grounds set forth in his exceptions.

The alleged errors imputed to the presiding Judge are presented under four exceptions, but, as stated by the appellant, the exceptions raise but two questions, namely:

(1) Did the presiding Judge err in refusing to direct a verdict for the defendant?

(2) Did the presiding Judge err in directing a verdict for the plaintiff?

No question is raised on account of the case having not been submitted to the jury, and it seems to be conceded by counsel for the litigants, that the issues were properly determinable by the Judge, and that it was his duty to direct a verdict for one of the parties litigant. The motion of the defendant was based upon the following grounds, quoting the language of defendant's counsel:

"Mr. Henry Ellerbe: The defendant moves for a directed verdict upon the ground that the uncontradicted testimony shows that the sale of the fertilizers was made to Mr. Brigman on a cash basis for the sum of One Thousand Five and 35/100 Dollars and thereafter the plaintiff took a note in excess of the amount which was due them at eight per cent. and it is usurious, and the plaintiff is only entitled to recover the sum of One Thousand Five and 35/100 Dollars. When this obligation became fixed and Brigman became the owner of the fertilizer, and the Fertilizing Company having made demand for this fixed sum of One Thousand and Five and

35/100 Dollars they could not afterwards change the status so as to collect a usurious amount."

In support of appellant's position counsel for appellant cites the following statement of the law from Cyc.:

"Where the sale is made on a cash basis and for a cash price and the vendor forbears to require the cash payment agreed upon in consideration of the vendee's promising to pay at a future day a sum greater than that agreed cash value with lawful interest, in such case there is a forbearance to collect an existing debt, and the excessive charge therefor is usurious." 39 Cyc., 927.

"f. Obligation given to pay a larger sum than actually loaned or due. (1) In general. Another device frequently employed to cloak a usurious transaction is to require the borrower to give his obligation bearing legal interest, for a sum in excess of that actually received by him. If the difference between the face of the obligation and the sum actually received or owed by the debtor, when added to the interest stipulated, exceeds the rate of interest permitted by law, the obligation is usurious." 39 Cyc., 958.

"(III) Forbearance in Notes for Deferred Payments. When a certain sum of money has become payable under a contract of sale as a cash price, then the taking of notes therefor payable at a future day is a forbearance and if an additional sum greater than legal interest for the extension period is exacted the contract is usurious." 39 Cyc., 943.

These principles of law are well recognized, but, under our view, are not applicable to the case at bar. The pertinent facts of the case, briefly stated, are as follows: In January, 1926, the parties entered into a written contract, signed by the defendant January 16, and two days later signed by the plaintiff. Under this instrument of writing the defendant purchased certain fertilizers from the plaintiff, and agreed to the prices stipulated therein for the fertilizers. The instrument contained a provision to the effect that, in the event the

defendant paid cash for the fertilizer, he would receive a certain discount. There was stamped across the contract the following wording: "This contract approved on S. D. B. L. basis only," which meant that the fertilizer was to be shipped with bill of lading attached to draft for the fertilizer, based on the price stipulated in the contract, less the amount of discount stated in the contract for cash. Later on, pursuant to this contract, the defendant ordered from the plaintiff 40 tons of fertilizer, and shipment was made to the point directed, draft being drawn on the defendant, through his bank, for $1,005.35, which was the net amount due for the fertilizer, according to the price stipulated in the contract, less the discount allowable under the contract for cash payment. When this draft reached the bank, through the regular channels, and was presented to the defendant for payment, the defendant was not in a position to pay the draft; whereupon the officer of the bank held a 'phone conversation with the plaintiff's office and procured authority to deliver the bill of lading to the defendant without the payment of the draft. Notwithsanding the testimony of the defendant that he gave no instruction to the bank officer, in view of the fact that the defendant readily accepted the benefit of the result of the action of the bank officer, we hold that the bank officer acted for and in behalf of the defendant when he procured authority to deliver the bill of lading without the payment of the draft. Thereafter the plaintiff prepared and sent to the defendant to be executed by the defendant a note for the cost of the fertilizer according to the price stipulated in the contract, without any allowance for cash. In our opinion, waiving the requirement of the payment of the draft attached to the bill of lading and authorizing the bill of lading delivered to the defendant, and the defendant accepting the same without the payment of the draft, in effect amounted to an agreement between the parties to strike from the contract the statement, "this contract approved on S. D. B. L. basis only." The note in question was executed by the defendant.

As we view the case, we cannot agree with the contention of the appellant that the fertilizer was sold for cash price of $1,005.35, and that the only consideration of the note in question, the $1,175.04 note, was the forbearance of the plaintiff to collect an existing debt. When the contract was modified in the particular to which we have called attention, the other provisions of the same remained in full force and effect, and, when the defendant received the fertilizer under the conditions above set forth, he was under obligations to execute the note in question, embodying the cost of the fertilizer based on the price stipulated in the contract. The fact that at the time the note was executed by the defendant the plaintiff's representative gave to defendant a statement in writing that, if the note was paid by a certain date, March 29th, he would be allowed the same discount stipulated for the payment of cash, could not affect the case, for the defendant made no offer to settle by that date. The testimony of the defendant as to additional promises on the part of plaintiff's representative at the time the contract and above-mentioned statement were signed cannot be considered, for the reason that it tends to contradict the written instrument.

In our opinion, the presiding Judge properly refused defendant's motion for a directed verdict. Furthermore, the plaintiff, having proven the allegations of the complaint, was entitled to a directed verdict, and in our opinion his Honor, Judge Grimball, committed no error in granting plaintiff's motion.

The exceptions are therefore overruled, and it is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby affirmed.

Mr. Chief Justice Watts concurs.

Mr. Justice Cothran (concurring in result) : I concur in the result announced in the opinion of Mr. Justice Carter, but wish to express my views of the case in somewhat different form, as follows:

This is an action upon a promissory note executed and delivered by the defendant to the plaintiff, dated March 15, 1926, due September 15, 1926, for $1,175.04, with interest at 8 per cent. from April 10, 1926, and 10 per cent. attorney's fees.

The defendant admitted the execution and delivery of the note, and set up two defenses to the plaintiff's action:

(1) That he executed and delivered the note upon an agreement with the plaintiff's agent that he might discharge it by the payment by March 29th of the sum of $1,005.35 without interest, or at any time thereafter by the payment of that amount with 8 per cent. interest from March 29th which he had tendered to the plaintiff in September.

(2) That the note for $1,175.04 was usurious, constituting an agreement to pay more than he legally owed the plaintiff.

The case was tried before his Honor Judge Grimball and a jury. At the close of the testimony each party moved for a directed verdict. The motion of the plaintiff was granted and a verdict rendered in its favor for the full amount of the note, interest, and attorney's fees. From the judgment entered thereon, the defendant has appealed.

The facts are these: On January 16, 1926, the plaintiff and the defendant entered into a written agreement for the sale of certain fertilizers by the plaintiff to the defendant. In the contract was a schedule of what was termed "carload consumers' price per ton" for the several kinds of fertilizer listed. The defendant was, under the terms of the contract, allowed a discount of 13 per cent. for cash. The contract was approved by the plaintiff specifically upon a cash basis; that is, a shipment or shipments under a bill of lading with draft attached, what is known as an "order notify" shipment.

In February the defendant placed an order for 40 tons, which was filled on February 15th by shipment to C. C. Brigman, a customer of the defendant J. O. Brigman, as an

"order notify" shipment. The invoice at the listed prices, less the discount allowed to the defendant for cash, amounted to $1,005.35. A draft with bill of lading attached, for that amount, upon the defendant, was forwarded to the Marion National Bank for collection. When the draft was presented for payment, the defendant was unable to meet it, and requested the bank to telephone the company for the consent to a delivery of the fertilizers without payment of the draft. The company consented, and the shipment was delivered upon the promise of the defendant to pay the cash within a few days. The defendant paid no attention to his engagement to pay the draft, and on February 23d the plaintiff sent him a note for him to sign in the sum of $1,175.04, which represented the invoice price without the discount allowed for cash.

The defendant delayed the execution and return of the note, though frequently requested by the plaintiff to either sign and return the note, which was based upon the time prices, or remit in cash for the invoice, but begging for further time in which to settle upon a cash basis.

On March 11th, the plaintiff wrote to the defendant: "We cannot consistently wait any longer for settlement of this shipment and must ask you either to send us cashier's check by return mail or sign the note and send it in.".

The defendant still neglected to do either, and a representative of the plaintiff had to go to his home for a settlement one way or the other. He did not have the cash to close the transaction and get the benefit of the discount, and on March 15th, upon the insistence of the plaintiff's representative, executed and delivered the note for $1,175.04, the credit price, to the plaintiff, due in September. He was still anxious, naturally, to get the benefit of the cash price, and insisted upon the execution by the plaintiff of the following memorandum, which was delivered to him at the time the note was given. "I will hold note until March 29th, 1926, to be redeemed by paying $1,005.35."

The plaintiff was not only willing to accommodate the defendant by authorizing the delivery without payment of the draft, about the middle of February upon his promise to make early settlement, but to extend the time within which he could get the benefit of the cash settlement to March 29th, six weeks later than the time the defendant should have paid the draft.

The defendant in his answer contends that the agreement between him and the representative of the company, at the time of the execution of the time note, was that he should be entitled at any time before the note fell due, to liquidate it by the payment of the cash price. Not only does he produce no evidence to sustain this contention, but the same would have been inadmissible under the parol evidence rule, for the memorandum specifically limits this privilege to March 29th.

After the note fell due in September, the defendant made a tender based upon this theory, of the cash price with interest from March 29th, which was refused, and properly so.

The transaction clearly shows a purpose on the part of both parties to convert what was a cash transaction into a time transaction, with the option to pay by March 29th which the defendant did not avail himself of. It was one entered into by the parties with full knowledge of all the circumstances and perfectly valid.

I do not perceive the remotest ground for the contention that it was tainted with the vice of usury.

MESSRS. JUSTICES BLEASE and STABLER concur.